

Gregory K. McGillivary
gkm@mselaborlaw.com

February 17, 2021

**VIA ECF**
Hon. Barbara C. Moses
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *Gilmore, et al. v. City of New York*, Case No. 19-cv-06091-BCM

Dear Judge Moses:

      Pursuant to this Court's January 19, 2021, Order (Dkt. 86), Plaintiffs respectfully submit this letter on behalf of all parties regarding the proposed Settlement Agreement ("Settlement" or "Agreement") between the Plaintiffs and Defendant City of New York in the above-referenced Fair Labor Standards Act (FLSA) case. For the reasons set forth below, the Settlement is fair and reasonable and should be approved. The signed Settlement Agreement (**Exhibit 1**), and a Proposed Order (**Exhibit 2**) are attached, along with supporting declarations from Plaintiffs' counsel Gregory K. McGillivary (**Exhibit 3**) and Hope Pordy (**Exhibit 4**).

      All Plaintiffs have been informed of the terms and have given their consent to the settlement. The parties now submit the Settlement Agreement for the Court's consideration pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015) and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020).

      **I.**    **Claims Asserted and Procedural History**

      Plaintiffs are four individuals who worked or work for the City's Department of Environmental Protection (DEP) as Motor Vehicle Operators (MVOs). Plaintiffs' primary job duties include picking up waste materials from the City's fourteen wastewater treatment plants and satellite locations and delivering it to Ward's Island, where the waste materials will then be transported to area landfills. Plaintiffs perform these job duties in support the mission of DEP, which is to protect public health and the environment by supplying clean drinking water, collecting and treating wastewater, and reducing air, noise and hazardous materials pollution.

      On June 28, 2019, and July 17, 2019, Plaintiffs filed their consent to sue forms with this Court. Dkts. 2, 14. Plaintiffs have made certain allegations in this Lawsuit regarding Defendant's alleged failure to pay wages and overtime compensation properly under the FLSA, 29 U.S.C. § 201 et seq. Specifically, Plaintiffs allege that:

February 17, 2021
Page 2

1) Defendant failed to compensate Plaintiffs for pre-shift and post-shift work captured on the City's timekeeping system, CityTime, (Uncompensated Pre- and Post-Shift Overtime Claim);
2) Defendant failed to compensate Plaintiffs for overtime work performed during Plaintiffs' unpaid meal (Meal Period Claim); and
3) Defendant failed to properly calculate the regular rate of pay in violation of the FLSA by failing to include night shift and vehicle differentials in the regular rate of pay (Regular Rate Claim).

The parties engaged in extensive discovery. In addition to taking written discovery of the Plaintiffs, the Defendant deposed each Plaintiff. The parties exchanged a significant number of documents including payroll documents, CityTime data, policies, procedures, personnel files, and vehicle trip sheets. The Plaintiffs took Fed. R. Civ. P. 30(b)(6) depositions on numerous topics, and both parties' expert witnesses analyzed voluminous pay and hours worked data, exchanged expert reports, and were deposed. The parties also spent significant time preparing summary judgment briefing before the briefing schedule was stayed pending the resolution of this Court's Order to Show Cause regarding Plaintiff German Sosa's failure to respond to written discovery. Dkts. 77-79.

Following motion practice regarding the City's request for sanctions against Plaintiff Sosa (Dkts. 77, 80), the parties engaged in extensive settlement discussions.

## II. Terms of the Proposed Settlement Agreement

The Agreement provides that Defendant will pay a total Settlement Amount of $332,178.73 to resolve the Lawsuit. Exhibit 1, ¶ 2. The Settlement Amount will be paid as follows: (1) a set of payroll checks and/or direct deposit payments made payable to each Plaintiff in accordance with Plaintiffs' Counsel's instructions constituting his or her share of the backpay award in the amount of **$40,467.30** ("the Backpay Amount"); and (2) one check in the amount of **$291,711.43** constituting liquidated damages, attorneys' fees and litigation expenses, payable to Plaintiffs' Counsel ("Lump Sum Amount"). Ex. 1, ¶ 2.1(a)-(b).

The Lump Sum Amount will be distributed as follows: (1) $31,711.43 in liquidated damages; (2) $20,005.89 in out-of-pocket expenses to Plaintiffs' Counsel; and (3) $239,994.11 in attorneys' fees. Ex. 1, ¶ 2.1(b).

The backpay and liquidated damages portion of the settlement funds will be divided among the Plaintiffs based on their actual timekeeping and payroll data, which was produced to Plaintiffs by the City for each individual Plaintiff. Those records were provided through July 20, 2019, and then extrapolated to November 30, 2020, for the Plaintiffs who are still working for DEP as an MVO. Based on the payroll information provided, and the extrapolation, it is Plaintiffs' position that the total amount of damages for a three-year recovery period for all Plaintiffs is $83,671.26. However, the parties have agreed, for purposes of this settlement, that Defendant shall pay back pay in the amount of $40,467.30 and liquidated damages in the amount of $31,711.43 for a total of $72,178.73. Exhibit 1, ¶ 2.1. On the Regular Rate Claim, each Plaintiff will receive a backpay payment equal to their damages and 100% liquidated damages. Plaintiffs Gilmore, Sykes and Thomas will receive backpay payment equal to their damages and 85% liquidated damages on their Uncompensated Pre- and Post-Shift Overtime Claim. Plaintiffs Gilmore, Sykes and Thomas

February 17, 2021
Page 3

will receive backpay equal to their damages and 85% liquidated damages on their Meal Period Claim. In consideration of the discovery dispute regarding his failure to produce documents, Plaintiff Sosa will receive backpay equal to 75% of his damages and 50% liquidated damages on his Uncompensated Pre- and Post-Shift Overtime and Meal Period Claims. Additionally, Plaintiff Sosa's liquidated damages amount will be reduced by $2,115.00 for the agreed-upon fees Plaintiff Sosa owes to the Defendant. Dkt. 87. The settlement amount represents the plaintiffs' recovery under a three-year statute of limitations.

In consideration and exchange for this Settlement, the Plaintiffs agree to release the Defendant for all wage and hour claims, as well as claims for attorneys' fees and costs, through February 17, 2021. Ex. 1, ¶¶ 3.1-3.4.

Each of the Plaintiffs have been informed of the methodology for calculating damages as well as their individual recovery amounts, based on the City's timekeeping and payroll data. Specifically, Plaintiffs' expert reviewed the CityTime punch data and payroll data provided by the City to determine the precise value for each claim that each Plaintiff asserts in the instant case. Each Plaintiff's individual recovery is based on their actual timekeeping and payroll data. Declaration of Gregory K. McGillivary ("GKM Decl."), ¶ 3. Each Plaintiff has had the opportunity to dispute their recovery amount, as well as to review and dispute the recovery amounts of all other Plaintiffs. GKM Decl., ¶ 4. All Plaintiffs have also been notified of the amount of attorneys' fees and expenses, and to date, there are no unresolved disputes. *Id.* Additionally, the Plaintiffs have agreed to all other terms of the Settlement Agreement. GKM Decl., ¶ 3.

### III. Applicable Factors for Approving FLSA Settlements

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020); *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). "As a result, district courts in this Circuit routinely review FLSA settlements for fairness before approving any stipulated dismissal." *Id.* "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

Courts evaluating whether FLSA settlements are reasonable consider the following factors:

(1) the Plaintiffs' range of possible recovery;
(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
(3) the seriousness of the litigation risks faced by the parties;
(4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
(5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic*, Inc., 900 F. Supp. 2d at 336; *Fisher*, 948 F.3d at 599-600 ("District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*…."). Importantly, under the Second Circuit's recent *Fisher* decision, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement;

February 17, 2021
Page 4

(2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher,* 948 F.3d at 606.

### A. Application of the *Wolinsky* Factors to the Settlement

As discussed below, the proposed Settlement is fair and reasonable to Plaintiffs and Defendant.

#### i. Plaintiffs' Possible Range of Recovery

The Total Settlement is $332,178.73, allocated as $40,467.30 in backpay, $31,711.43 in liquidated damages, $239,994.11 in attorneys' fees, and $20,005.89 as reimbursement of expenses. Thus, $72,178.73 is allocated to the Plaintiffs as backpay and liquidated damages (Plaintiffs' Recovery). Plaintiffs believe the Plaintiffs' Recovery represents a full award of Plaintiffs' total claimed back pay damages using a full three-year recovery period and 72.5% of liquidated damages. GKM Decl., ¶ 6. The chart below demonstrates the value of the claims assigned by the parties to enter into the Settlement:

| Claim | Gilmore | Sykes | Thomas | Sosa | TOTAL |
|---|---|---|---|---|---|
| Regular Rate Backpay | $138.80 | $206.59 | $843.54 | $28.12 | **$1,217.05** |
| Regular Rate Liquidated Damages | $138.80 (100%) | $206.59 (100%) | $843.54 (100%) | $28.12 (100%) | **$1,217.05** |
| Uncompensated Pre- and Post-Shift Backpay | $1,335.76 | $4,730.42 | $13,987.82 | $1,085.82 (75%) | **$21,139.82** |
| Uncompensated Pre- and Post-Shift Liquidated Damages | $1135.40 (85%) | $4,020.86 (85%) | $11,889.65 (85%) | $723.88 (50%) | **$17,769.79** |
| Meal Period Backpay | $3,604.71 | $5,400.25 | $6,086.33 | $3,019.14 (75%) | **$18,110.43** |
| Meal Period Liquidated Damages | $3,064.00 (85%) | $4,590.21 (85%) | $5,173.38 (85%) | $2,012.76 (50%) | **$14,840.35** |
| **TOTAL** | **$9,417.47** | **$19,154.92** | **$38,824.26** | **$4,782.08[1]** | **$72,178.73** |

Considering the risks associated with trying the remaining claims, and establishing damages, this amount is clearly reasonable. *See Rojas v. Pizza Pete's LLC*, 2019 U.S. Dist. LEXIS 149717, 2019 WL 4447578, at *5 (net settlement of 36% of total alleged is "clearly reasonable given the uncertainties inherent in any litigation"); *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486, at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Felix v.*

---

[1] Plaintiff Sosa's Liquidated Damages award of $2,764 has been reduced by $,2115 in fees owed to the Defendant to equal $649.

February 17, 2021
Page 5

*Breakroom Burgers & Tacos*, 15 Civ. 3531, 2016 U.S. Dist. LEXIS 30050, at *2 (S.D.N.Y. 2016) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

The Settlement Amount is based on the damages calculations prepared by the Plaintiffs' expert damages witness, Dr. Louis Lanier, which were reviewed by Defendant's expert witness, Dr. Christopher Erath, as part of the parties' arm's-length negotiations. The Settlement Amount is based on a three-year statute of limitations on all claims (i.e., three years prior to the date each Plaintiff's consent-to-join form was filed in court through February 17, 2021, or the Plaintiff's last date of employment with the Defendant, whichever is earlier). GKM Decl., ¶ 5. To achieve this outcome at trial, Plaintiffs would have been required to prove that Defendant willfully violated the law; otherwise, a two-year statute of limitations would apply. 29 U.S.C. § 255 (a). *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

A discussion of the settlement amounts obtained and the associated litigation risks with respect to each claim is set forth below.

**Regular Rate Claim**. On the Plaintiffs' Regular Rate Claim, which would require the Plaintiffs to prove at trial that the Defendant failed to include night shift and vehicle differentials in the regular rate of pay, Defendant agreed to pay $2,434.10, which accounts for three years of backpay damages, as well as an additional 100% of the backpay amount as liquidated damages. The calculation of damages for these, and all other claims, was based on the City's payroll and timekeeping data for all Plaintiffs. At summary judgment or trial, Plaintiffs would have to prove liability on this claim, the amount of backpay owed as a result of these violations, as well as whether a two or three-year recovery period applied. The Court would have then determined whether liquidated damages were owed.

**Uncompensated Pre- and Post-Shift Overtime Claim**. Defendant agreed to pay $21,139.82 to compensate Plaintiffs for backpay owed for alleged work performed prior to and after the Plaintiffs paid shift that is captured on CityTime. The amount represents full backpay for Plaintiffs Gilmore, Sykes and Thomas and a compromise of 75% backpay for Plaintiff Sosa, in consideration of his failure to produce certain documents related to this claim.

Plaintiffs faced significant risk at trial on this claim because the Plaintiffs carry the burden of proving that they perform uncompensated pre-shift and post-shift work during the time they are clocked into CityTime, and that the City knew or should have known about this uncompensated work. The settlement amount includes an additional $17,769.79 in liquidated damages on this claim, which is 85% of the backpay amount for Plaintiffs Gilmore, Sykes and Thomas, and 50% of the backpay amount for Plaintiff Sosa.

**Meal Period Claim.** The settlement amount of $18,110.43 for the Meal Period Claim reflects damages for three missed meal periods per week (i.e., 1.5 hours of overtime pay per week), for a three-year recovery period. The Plaintiffs faced risk on this claim because, at trial, the Plaintiffs carry the burden of proving they performed uncompensated work with Defendant's knowledge, and that this unpaid work resulted in damages. Plaintiffs note that this settlement amount represents full backpay for Plaintiffs Gilmore, Sykes and Thomas, and 75% of backpay that Plaintiff Sosa would have sought at trial. The settlement amount includes liquidated damages on this claim equal to 85% of the backpay amount as liquidated damages for Plaintiffs Gilmore Sykes and Thomas, and 50% of the backpay amount as liquidated damages for Plaintiff Sosa.

February 17, 2021
Page 6

For the Uncompensated Pre- and Post-Shift Overtime and Meal Period Claims, it is possible that the jury could have found that Plaintiffs work *some* pre- and post-shift minutes, but not all of the minutes that appear in CityTime and awarded fewer minutes per-day of pre-shift or post-shift overtime. Further, the jury could have awarded fewer minutes per week in unpaid meal periods. Significantly, even if the jury ruled in Plaintiffs' favor, the jury may have found that these violations were not willful, resulting in a two-year rather than three-year recovery period, and it is possible that the Court may not have awarded liquidated damages.

### ii.  Avoiding Anticipated Burdens and Expenses

Litigating FLSA claims and damages at trial would be a fact-intensive process demanding additional costly litigation by both parties. Without this Settlement, both parties would need to spend significant amounts of time, money and expense to undertake pre-trial briefing of summary judgment motions regarding liability issues, likely followed by a lengthy period spending time and resources to prepare for trial, including meeting with and preparing each of the individual Plaintiffs for trial testimony, preparing trial exhibits, preparing motions in limine, preparing pre-trial briefing, drafting jury instructions, voir dire, and a verdict form, preparing opening statements, presenting the case to a jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal. In short, the anticipated burdens and expenses on both parties were significant.

### iii.  Seriousness of Litigation Risks

As noted above, there was no guarantee of success on either side on Plaintiffs' Uncompensated Pre- and Post-Shift Overtime Claim, Meal Period Claim and Regular Rate Claim, as well as the issues of whether the Defendant's violations on all claims were willful and lacked good faith and reasonableness. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

### iv.  Arm's-Length Bargaining

Both parties engaged in good faith, arm's-length negotiation in reaching this Settlement. Counsel for both parties negotiated settlement terms over the course of several months, until a tentative settlement was reached. GKM Decl., ¶ 2.

Ultimately, the parties reached an agreement in principle and the settlement terms were then approved by the individual Plaintiffs. Plaintiffs' Counsel spoke with each of the four Plaintiffs individually to discuss the terms of the Settlement Agreement and how the individual settlement amounts were calculated. *Id.*

### v.  Possibility of Fraud or Collusion

Given the parties' arm's-length negotiating and the parties' good faith participation in settlement discussions, there was no opportunity for fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be a fair and reasonable Settlement consistent with standards established in the Second Circuit for FLSA settlements.

### B. Attorneys' Fees and Expenses[2]

#### i. Under *Fisher* and *Wolinsky* Attorneys' Fees are Reviewed for Reasonableness

"Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA..." *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261, at *5 (S.D.N.Y. May 7, 2015) (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) for "commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'"); *See Bozak v. FedEx Ground Package Sys.*, 2014 WL 3778211, at *16 (D. Conn. 2014) ("Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel."); *Capsolas v. Pasta Resources Inc.,* 2012 WL 4760910, at *8 (S.D.N.Y. 2012) (fee request of one-third is "consistent with the norms of class litigation in this circuit").

"In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys' fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fees. In other words, there is a greater range of reasonableness for approving attorney's fees in an individual action where the parties settled on the fee through negotiation." *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 CV 4377 (KAM)(CLP), 2010 U.S. Dist. LEXIS 60985, at *14-16 (E.D.N.Y. May 17, 2010). Here, the Plaintiffs and Defendant negotiated attorneys' fee separately from the four individual Plaintiffs' recovery and settled on the fee amount of $239,994.11, and this amount is separate and distinct from the backpay and liquidated damages allocated to the Plaintiffs under the Settlement Agreement.

Moreover, in *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 605 (2d Cir. 2020), the Second Circuit clarified that there is no cap on the amount of attorneys' fees to be recovered in an FLSA settlement, and held that a district court abuses its discretion by rewriting and reallocating funds, including attorneys' fees, under a settlement agreement negotiated between the parties.

The Court held that "a district court may not simply rewrite the terms of a settlement agreement because a 'settlement agreement is a contract that is interpreted according to general principles of contract law.'" *Id.* at 605. "If the 'terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.'" *Id.* (*quoting Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019)). Thus, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606. The Court emphasized that "even though a district court has a duty to

---

[2] Defendant takes no position regarding Sections III(B) and (C) of this letter other than to state that Defendant agrees to pay fees in the amount of $239,994.11 and costs in the amount of $20,005.89.

review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." *Id.*

The measure of court approved attorneys' fees is, of course, "reasonableness." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 336 ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."); *see also Camacho v. Ess-A-Bagel, Inc.*, 2014 U.S. Dist. LEXIS 171649, 2014 WL 6985633, at *1 (S.D.N.Y. Dec. 11, 2014) ("District courts must evaluate whether a proposed FLSA settlement is 'fair and reasonable' and whether any concomitant award of attorneys' fees is reasonable."). The parties have negotiated the fee amount in arm's length negotiations and determined that the fee amount is fair and reasonable.

### ii. The Degree of Success Obtained Demonstrates the Reasonableness of the Requested Fees

As the Second Circuit noted in *Fisher* "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606-07 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, (1992) (*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In this case, Plaintiffs Gilmore, Sykes and Thomas will recover 93% of their total possible recovery for a three-year period, and Plaintiff Sosa will recover 31% of his total possible recovery for a three-year period, less the fees owed to the City pursuant to this Court's January 19, 2021 Order. Dkt. 87.

In this Settlement, the Plaintiffs are recovering a portion of damages if they had succeeded not only on their back pay claims, but they are also receiving the benefit of a three-year statute of limitations and a significant portion of a liquidated damages. Further, given this Court's Order that Plaintiff Sosa's failure to comply with discovery orders is "significant" and likely prejudicial to the City, Plaintiff Sosa faced the risk of negative inferences against him at trial. As such, the degree of success obtained is significant. Further, each Plaintiff's individual recovery amount is a sizeable settlement in an FLSA action. GKM Decl., ¶ 6.

### iii. The Requested Fees are Reasonable in Light of Traditional Criteria

Additionally, in determining a reasonable award of attorneys' fees, the Court will consider the "traditional criteria" such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement and (6) public policy considerations. *Goldberger,* 208 F. 3d 43, 50 (2d Cir. 2000) (internal quotations omitted). An analysis of these criteria further supports the fee requested.

#### 1. The Litigation Was Complex

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596, 2014 WL 3778173 at *10 (S.D.N.Y. 2014). Here, given the presence of multiple claims, and the sophistication of the employer and its policies, this case did not represent a straightforward FLSA claim where a single employee seeks compensation for an easily defined

amount of unpaid work. As a result, this litigation was somewhat complex, and Plaintiffs' Counsel's expertise greatly benefitted the Plaintiffs.

To start, the case involved a thorough investigation by Plaintiffs' Counsel to determine the extent of the violations. GKM Decl., ¶ 9. Following Defendant's Answer, formal discovery began, and the process was time consuming and multi-faceted. *Id.* Defendant took written discovery from the individual Plaintiffs, seeking numerous documents and propounding extensive interrogatories. Additionally, Defendant deposed all four Plaintiffs in this matter. *Id.* Plaintiffs' counsel met with each of these four Plaintiffs to explain the deposition process and defend their depositions. *Id.* Plaintiffs' Counsel also deposed the Defendant's FRCP 30(b)(6) witnesses on numerous topics related to the Plaintiffs' job duties, Defendant's policies regarding unpaid meal periods, Defendant's policies on timekeeping and payroll, Defendant's alleged efforts towards FLSA compliance, and Defendant's alleged efforts to train the Plaintiffs on the FLSA and overtime. *Id.*

Additionally, the parties engaged expert witnesses to compile and analyze hundreds of thousands of lines of pay and hours work data, with the Plaintiffs' expert witness applying mathematical formulas to determine the damages owed in this case. GKM Decl., ¶ 10. The Plaintiffs' damages expert witness prepared a report, backed up by computer data and programming, which was reviewed and critiqued by Defendant's expert witness, and both expert witnesses were deposed. *Id.*

Following discovery, Plaintiffs' Counsel combed through the records produced during discovery, along with the deposition testimony, to prepare summary judgment briefing, which was stayed just before the opening brief deadline pending this Court's decision on the City's Motion for Sanctions against Plaintiff Sosa. GKM Decl., ¶ 11.; Dkt. 79.

Finally, there remained several complex questions left for summary judgment, and if unsuccessful, for the jury to decide including: 1) whether the Defendant suffered or permitted Plaintiffs to perform uncompensated pre-shift and post-shift overtime; 2) whether the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime during their meal periods; 3) whether the CityTime system accurately captured the uncompensated pre- and post-shift overtime at issue, and if not, how many minutes per week did Plaintiffs spend performing uncompensated pre- and post-shift overtime; 4) how many minutes per week did Plaintiffs spend performing uncompensated overtime during the meal period; 5) whether the Defendant failed to include premium payments in the regular rate of pay for purpose of calculating overtime compensation; 6) whether the Defendant willfully violated the FLSA; 7) the damages resulting from the Regular Rate Claim; 8) the damages resulting from the Pre-Shift and Post-Shift Uncompensated Overtime Claim; and 9) the damages resulting from the Meal-Period Claim. These questions would require the Plaintiffs to proffer significant proof at trial to meet their burden on each of those claims.

Taken together, this litigation was complex and required significant effort and expertise by Plaintiffs' Counsel to advance Plaintiffs' claims and reach a favorable outcome.

### 2. The Time and Labor Required Was Extensive

Significant time and labor were spent by Plaintiffs' Counsel in reaching the settlement. GKM Decl., ¶ 12; Pordy Decl., ¶ 13. During the 19 months spent litigating this lawsuit, Plaintiffs' Counsel have not been paid for any of the work that they have performed. This uncompensated

February 17, 2021
Page 10

work has been substantial and includes: 1) interviewing Plaintiffs and investigating claims; 2) preparing and filing the Complaint; 3) attending court conferences; 4) preparing the First Amended Complaint; 5) negotiating a discovery plan with Defendant; 6) preparing written discovery to Defendant; 7) analyzing written discovery requests and conferring with the four Plaintiffs to respond to same; 8) working with Plaintiffs to compile documents in response to Defendant's requests; 9) meeting with Plaintiffs' to prepare for depositions; 10) defending Plaintiff depositions; 11) noticing Rule 30(b)(6) depositions on numerous topics; 12) preparing for Rule 30(b)(6) depositions; 13) taking Rule 30(b)(6) depositions; 14) engaging an expert damages witness to prepare damages calculations by analyzing hundreds of thousands of lines of data; 15) analyzing the report of Defendant's expert witness; 16) taking and defending expert damages' witnesses depositions; 17) engaging in motion practice and a discovery conference regarding the City's Motion for Sanctions against Plaintiff Sosa; 18) preparing for and drafting the initial summary judgment briefing; 19) preparing facts in support of the same; 20) preparing a settlement demand; 21) conferences with the Plaintiffs regarding settlement; 22) engaging in extensive settlement discussions; 23) negotiating over the written terms of the settlement agreement; 24) notifying Plaintiffs of the terms of the settlement agreement and obtaining their approval; 26) preparing the settlement approval papers; and 28) preparing for administration of the Settlement. GKM Decl., ¶ 12; Pordy Decl., ¶ 13.

### 3. The Fee in Relation to the Settlement Fund is Reasonable

The Plaintiffs have negotiated an overall settlement of $332,178.73, with $239,994.11 of that amount allocated for attorneys' fees. As the Second Circuit explained:

> Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a reasonable attorney's fee to be paid by the defendant. 29 U.S.C. § 216(b). Nothing in this clause or the surrounding text supports the conclusion that a reasonable attorney's fee must be a proportional fee.

*Fisher*, 948 F.3d at 603 (internal citations omitted). This is because a "proportionality rule would also be inconsistent with the remedial goals of the FLSA, which we have deemed a 'uniquely protective statute." *Fisher*, 948 F.3d at 603 (citing *Cheeks*, 796 F.3d at 207).

Refusing to impose a proportionality requirement is consistent with the broad, remedial purposes of the FLSA:

> In 1938, Congress enacted the FLSA to guarantee workers a fair day's pay for a fair day's work and to guard against the evil of overwork as well as 'underpay.' By implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.

*Fisher*, 948 F.3d at 603 (internal quotations omitted).

February 17, 2021
Page 11

Thus, "[i]n advancing Congress's goals under the FLSA to ensure a 'fair day's pay for a fair day's work,' the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation." *Id.* As the Second Circuit explained, "if plaintiffs' attorneys in these so-called "run of the mill" FLSA actions are limited to a proportional fee of their client's recovery….no rational attorney would take on these cases unless she were doing so essentially pro bono. Without fee-shifting provisions providing compensation for counsel, employees like Fisher would be left with little legal recourse." *Id.*

Given this, the Second Circuit noted that:

> [W]e have long held -- and we reiterate today -- that a fee may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation. The Supreme Court, this Court, and district courts in this Circuit have long recognized the significance of attorneys' fees in civil rights cases and have not hesitated to award or approve disproportionate fees to counsel.

*Fisher*, 948 F.3d at 604-05.

In light of this, the requested fee — which, as explained below, represents less than Plaintiffs' Counsel's lodestar in this case — is reasonable because Plaintiffs' Counsel worked diligently to ensure recovery in this matter, which was far more complex than the "run of the mill" FLSA action described in *Fisher* given that it involved the multiple claims including recorded and unrecorded unpaid overtime work and miscalculation of the regular rate. Plaintiffs' Counsel relied on their expertise to achieve outstanding results for the Plaintiffs. Counsel's work achieved the FLSA's purpose of guaranteeing these four essential workers in the City's Department of Environmental Protection receive a fair day's pay for a fair day's work while guarding against the evil of overwork as well as underpay. Finally, all Plaintiffs were informed of the attorneys' fees and expenses being sought by Plaintiffs' Counsel under the Settlement Agreement, and the Plaintiffs approved this amount. GKM Decl., ¶ 4.

### 4. The Risk of Litigation

Plaintiffs' Counsel undertook to prosecute this action without any guarantee of payment and litigated on a contingent basis. GKM Decl., ¶ 13. Plaintiffs' Counsel was required to make a significant investment of time and resources without a guarantee of any kind. The claims of the four individual Plaintiffs would have been hard fought on summary judgment and at trial by Defendant, and Defendant would have attempted to move for judgment as a matter of law and reduce or eliminate the damages owed to the Plaintiffs. Accordingly, Plaintiffs' Counsel faced significant obstacles of recovery for all Plaintiff absent settlement.

### 5. The Quality of Representation

As described fully in the Declarations of Gregory K. McGillivary and Hope Pordy, Plaintiffs' counsel are nationally-recognized experts in the FLSA and wage and hour law, and their expertise benefited the Plaintiffs greatly. For example, Plaintiffs' Counsel Gregory K. McGillivary has litigated hundreds of FLSA cases and is the author of the government chapter in the treatise "The Fair Labor Standards Act," E. Kearns, and Plaintiffs benefited from this level of expertise. GKM Decl., ¶ 14-24; *See also* Pordy Decl., ¶¶ 3-11, 18.

February 17, 2021
Page 12

### 6. Public Policy Weighs in Favor of Approving the Fee

As described above, the risk in this case was high and the work performed by Plaintiffs' Counsel significant. Plaintiffs' case was hardly "run of the mill," in that Plaintiffs presented claims based on multiple theories of liability, which involved extensive work to date and would involve additional extensive work to present at trial. As such, Plaintiffs' Counsel vindicated the rights of those whose wage claims might otherwise be too small to justify the retention of able, legal counsel through the use of a collective proceeding. This advances the broad remedial public policy purposes of the FLSA.

### 7. A Lodestar Cross-Check Support the Fees Requested

A lodestar cross-check will further demonstrate that the Settlement is fair and reasonable based on approved fee awards within the Second Circuit.

The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, 2019 WL 1915298 at *8 (S.D.N.Y. 2019). "Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Bryant v. Potbelly Sandwich Works, LLC*, 2019 WL 1915298, at *19 (S.D.N.Y. 2020).

"Courts in this Circuit regularly award lodestar multipliers from two to six times lodestar with some courts approving fee requests that are up to eight times the lodestar, and in some cases, even higher...." *Bryant*, 2020 U.S. Dist. LEXIS 21900, at *19-20.

Multiplying the hourly rates here by the hours of work performed results in a lodestar of $334,159.50.[3] Here, the Settlement provides for $239,994.11 in attorneys' fees. Thus, Plaintiffs' Counsel's lodestar is a ***negative multiplier***. "Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of overcompensation." *Id.* Moreover, the amount and reduction were negotiated with defendant's counsel to reach an amount that was fair and reasonable.

As set forth in Sections III(A) and (B), Plaintiffs' counsel zealously and skillfully litigated this collective action with no guarantee of success and in response to the Defendant's vigorous defense. Moreover, the Plaintiffs achieved an outstanding degree of success in recouping unpaid overtime wages. Under these circumstances, a lodestar cross check supports the attorneys' fees requested.

---

[3] Attached to the Declaration of Gregory K. McGillivary (Exhibit 3) are the fee and expense listings for services performed by McGillivary Steele Elkin LLP as Attachment A. Attached to the Declaration of Hope A. Pordy (Exhibit 4) are the fee and expense listing for services performed by Spivak Lipton LLP as Attachment A.

February 17, 2021
Page 13

### C. Approval of Plaintiffs' Counsel's Expenses is Warranted

In this litigation, Plaintiffs' Counsel has incurred $20,005.89, in out-of-pocket expenses. A detailed breakdown of the expenses incurred by McGillivary Steele Elkin LLP is attached to the Declaration of Gregory K. McGillivary as Attachment A. A detailed breakdown of the expenses incurred by Spivak Lipton LLP is attached to the Declaration of Hope Pordy as Attachment A. Counsel are entitled to reimbursement of litigation expenses from the settlement fund. 29 U.S.C § 216(b). Plaintiffs' Counsel's expenses, including experts, copying, electronic research, travel and printing, were reasonable and necessary to counsel's representation of Plaintiffs. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 390 (S.D.N.Y. 2017) (awarding expenses for experts, copying, electronic research, travel and printing, and other out-of-pocket expenses).

## II. Conclusion

For all of the above reasons, the parties believe that this Settlement is a favorable outcome and will appropriately compensate Plaintiffs for the overtime pay issues that are the subject matter of this litigation. Accordingly, the parties respectfully submit that the Settlement, in its entirety, is fair and reasonable and should be approved by the Court.

Sincerely,

McGILLIVARY STEELE ELKIN LLP

Gregory K. McGillivary

cc: All Counsel of Record (via ECF)